The ZUNI INDIAN TRIBE OF NEW MEXICO, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 161–79L.

United States Claims Court.

April 19, 1989.

## ORDER

NAPIER, Judge.

Plaintiff's "Motion to Alter or Amend the Decision of May 27, 1987" [hereinafter referred to as "May 27 decision"] [1] arises out of the liability stage of a bifurcated action filed by the Zuni Indian Tribe against the United States of America for the taking of their ancestral lands in New Mexico and Arizona. Jurisdiction is conferred on the Court by special Act of Congress. *See* Act of May 15, 1978, Pub.L. 95–280, 92 Stat. 244.

On May 27, 1987, the Court (Presiding Judge Judith Yannello) filed two decisions setting forth findings of fact and conclusions of law with respect to the liability phase of the case.[2] After the May 27 decision was filed, and before plaintiff filed this motion, Judge Yannello left the bench and the undersigned successor judge was assigned to the case.

This Court denied defendant's motion for a new trial on liability filed August 8, 1988, after oral argument on December 19, 1988. *See* transcript dated December 19, 1988.

Before proceeding to the valuation phase of the case, plaintiff now moves the Court to clarify the May 27 decision with respect to the issue of recognized title.

Plaintiff moves the Court to add a conclusion of law that the Zuni aboriginal title was recognized by the United States Government under the Treaty of Guadalupe Hidalgo of 1848. Plaintiff does not challenge any existing findings or conclusions. Nor does it seek a new trial on liability.

Plaintiff argues only that the additional conclusion of recognized title is implied in the May 27 findings of fact and conclusions of law.

The issues have been briefed and oral argument has been held. For the reasons which follow, plaintiff's motion must be denied.

### Discussion

A. *"Aboriginal Title" and "Recognized Title" Defined*

■ "Aboriginal title" and "recognized title" to land are distinct, although not mutually exclusive, concepts.

■ An Indian tribe establishes aboriginal title by proving "actual, exclusive, and continuous use and occupancy [of the land] 'for a long time' prior to the loss of the property." *The Sac and Fox Tribe of Indians, et al. v. United States*, 161 Ct.Cl. 189, 202, 315 F.2d 896, 903 (citations omitted), *cert. denied*, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963).[3]

Recognized title is established "[w]here the Congress by treaty or other agreement has declared that thereafter Indians were to hold the lands permanently * * *." *Tee–Hit–Ton Indians v. United States*, 348 U.S. 272, 277, 75 S.Ct. 313, 316, 99 L.Ed. 314 (1954).

■ Aboriginal title does not trace its roots to a written document or land grant, but is established by offering historical evidence of the tribe's long-standing physical possession. Aboriginal title does not vest the titleholder with a fee simple interest in the land. "[It] is not a property right but amounts to a right of occupancy which the sovereign [the federal Government] grants and protects against intrusion by third parties * * *. [The] right of occupancy may

---

1. Because the Court's decisions of May 27, 1987, are not final judgments, plaintiff's motion is filed with the Court pursuant to RUSCC Rule 42(c).

2. The Court issued its ruling in two parts, both dated May 27, 1987. Hereinafter, the decision titled "Indian Claims; extent of aboriginal land and title; exclusive use and occupancy" is referred to as the "Title Decision," 12 Cl.Ct. 607, and the second decision titled "Indian Claims;

events and dates of taking of aboriginal land" is referred to as the "Takings Decision." 12 Cl.Ct. 641.

3. *See also* Clinton & Hotopp, Judicial Enforcement of the Federal Restraints in Alienation of Indian Land: The Origin of the Eastern Land Claims, 31 Me.L.Rev. 17, 70–71 (1974), *reprinted in* M. Price, *Law and the American Indian*, at 577–78 (2d ed. 1983).

be terminated and such lands fully disposed of by the sovereign itself without any legally enforceable obligation to compensate the Indians." *Tee–Hit–Ton Indians*, 348 U.S. at 279, 75 S.Ct. at 317.

■ The federal Government retains underlying sovereignty in the land and may extinguish or interfere with aboriginal title without incurring a constitutional duty to pay the titleholding tribe just compensation under the Fifth Amendment. "The taking by the United States of unrecognized Indian [aboriginal] title is not compensable under the Fifth Amendment." *Id.* at 285, 75 S.Ct. at 320. "The manner, method, and time of such extinguishment raise political, not justiciable, issues." *United States v. Santa Fe Pacific R. Co.*, 314 U.S. 339, 347, 62 S.Ct. 248, 252, 86 L.Ed. 260 (1941), *quoted in Tee–Hit–Ton Indians*, 348 U.S. at 281, 75 S.Ct. at 318.

However, Congress and the courts have long honored a policy of awarding "Indian gratuities for the termination of Indian occupancy of government-owned land rather than making compensation for its value a rigid constitutional principle." *Tee–Hit–Ton Indians*, 348 U.S. at 291, 75 S.Ct. at 323. This policy allows Indian tribes to recover the value of their land at the time of the taking without interest "as a matter of grace, not because of legal liability." *Id.* at 282, 75 S.Ct. at 318.

■ Specific congressional action, usually in the form of a treaty or statute is necessary to "recognize" aboriginal title. The written document is evidence of clear congressional intent to grant to a specific tribe a higher, fully enforceable, permanent property interest in a sufficiently defined territory. "Mere executive 'recognition' is insufficient, as is a simple acknowledgement that Indians physically lived in a certain region." *The Sac and Fox Tribe, et al.*, 161 Ct.Cl. at 192, 315 F.2d at 897. Further, the Supreme Court has more fully explained:

> There is no particular form for congressional recognition of Indian right of permanent occupancy. It may be established in a variety of ways but *there must be the definite intention by congressional action or authority to accord legal rights*, not merely permissive occupation. (Emphasis added.)

*Tee–Hit–Ton Indians*, 348 U.S. at 278–79, 75 S.Ct. at 317. *See also Hynes v. Grimes Packing Co.*, 337 U.S. 86, 101, 69 S.Ct. 968, 978, 93 L.Ed. 1231 (1948). The *Hynes* court stated that

> when Congress intends to delegate power to turn over lands to the Indians permanently, one would expect to and doubtless would find definite indications of such a purpose.

*Id.*

In *Shoshone Indians v. United States*, 324 U.S. 335, 348, 65 S.Ct. 690, 697, 89 L.Ed. 985 (1945), the Supreme Court did not find recognized title because

> [n]owhere in any of the series of treaties is there a specific acknowledgement of Indian title or right of occupancy * * * [h]ad either the Indians or the United States understood that the treaties recognized the Indian title to these domains, such purpose would have been clearly and definitely expressed by instruction, by treaty text or by the reports of the treaty commissioners, to their superiors or in the transmission of the treaties to the Senate for ratification.

*Id.*

■ Indians holding recognized title to land under a foreign government may retain their title under the United States Government if such is provided for by international agreement or treaty. Once Indian title is recognized by Congress, "recovery [including interest is] grounded on a taking under the Fifth Amendment." *Tee–Hit–Ton Indians*, 348 U.S. at 282, 75 S.Ct. at 319. "Where the Congress by treaty or other agreement has [recognized Indian title], compensation must be paid for a subsequent taking." *Id.* at 277, 75 S.Ct. at 316. Thus, recognition does not extinguish aboriginal title, but merely grants a higher, more permanent property right in addition to the historical rights derived from long-standing physical occupation and brings into play the "just compensation" clause of the Fifth Amendment.

B. *Confusion over the May 27, 1987 Decision*

The May 27 decision found (a) the Zuni held aboriginal title to their ancestral lands [4] and (b) the federal Government's actions constituted a taking thereby obligating the Government to pay "just compensation" to the Zuni.[5] The Court did not specifically conclude that the Zuni held, in addition to their aboriginal title, "recognized title" under the Treaty of Guadalupe Hidalgo. This conclusion is not drawn from a specific negative conclusion of law, but from the lack of a precise affirmative conclusion on the issue.

Confusion over the Court's silence in regard to the issue of "recognized title" arises in three contexts, which are the predicates for plaintiff's motion:

I. The issue of recognized title was fully briefed and argued at trial. Indeed, many of the Court's findings of fact relate specifically to this issue, but the Court never recorded a specific conclusion of law on this point.

II. Plaintiff argues that the May 27 decision's findings of fact satisfy all legal elements necessary for a finding of recognized title. Given this factual basis, plaintiff asserts that a finding of recognized title must be added to render the decision internally consistent.

III. Plaintiff further argues that the May 27 decision speaks in terms of constitutional "takings" and "just compensation" which arise only in the context of recognized title, not aboriginal title. Plaintiff argues that use of these constitutional concepts and obligations require a conclusion that recognized title exists,

and therefore, the Fifth Amendment is implicated.

C. *Clarification of the May 27 Decision —No Recognized Title.*

I. Although the recognized title issue was fully briefed and argued, the Court seemed to defer the issue to the valuation phase of the trial [6]—apparently under the perception that finding recognized title is synonymous with determining the amount of interest due, if any.

Despite this use of terms, the nature and extent of the Zuni title to the land must be decided during the liability phase. In its papers accompanying its motion, plaintiff concedes as much:

> Rule 42(c) of the Rules of the United States Claims Court provide for separate determinations of a plaintiff's right to recover and of the amount of the recovery. This case was bifurcated pursuant to Rule 42(c). The nature and extent of plaintiff's title to its aboriginal lands essentially defines its right to recover. Plaintiff's title should be completely and definitively described as part of the decision which culminates the first phase of this action. Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Alter or Amend the Decision of May 27, 1987, filed July 21, 1987, p. 7.

The issue was treated in the liability phase and a motion for a new trial on liability has been denied. This Court must now look to the May 27 decision's findings of fact for evidence of "the definite intention by congressional action or authority to accord legal rights [to the tribe], not mere-

---

4. "[I]t is concluded that the plaintiff has established aboriginal title, and exclusive use and occupancy of the area as claimed in its amended petition." *Title Decision* at 5.

5. "[I]t is concluded that plaintiff's aboriginal title was extinguished by acts or omissions of the United States by virtue of the events, and on the dates, described herein. The matter will now proceed to a determination of the amount of just compensation to which Plaintiff is entitled." *Takings Decision* at 4.

6. "The parties do raise an issue concerning whether plaintiff is entitled to interest on any

judgment awarding just compensation. This argument seems grounded in a discussion of 'recognized' title, whereas the Court, in its separate opinion, has found Zuni aboriginal title. In any event, based on the findings in that separate opinion as well as the instant opinion, such legal issue can be addressed at a later time (when the amount of just compensation is under advisement)." *Takings Decision* at 3 n. 2.

"Having determined that the plaintiff has established aboriginal title, it is unnecessary to treat the alternate contention that plaintiff had 'recognized title.'" *Title Decision* at 5.

ly permissive occupation". *Tee–Hit–Ton Indians*, 348 U.S. at 279, 75 S.Ct. at 317.

■ II. The Zuni ancestral lands came under United States sovereignty from Mexico by the Treaty of Guadalupe Hidalgo of 1848, 9 Stat. 922, and the Gadsden Purchase Treaty of December 30, 1853, 10 Stat. 1031. "The Treaty of Guadalupe Hidalgo contained a guarantee by the United States to respect the property rights of all Mexicans located within the newly acquired territory." (Citations omitted.) *Id.* at 288 n. 20, 75 S.Ct. at 321–22 n. 20.

The May 27 decision found that "[t]he Zuni people remained Mexican citizens during the entire Mexican period up to and including 1846," *Title Decision* at 41, finding No. 54. The court also found that "the Zuni became subject to the sovereignty of the United States with their aboriginal lands [held under Mexico] intact." *Title Decision* at 44, finding No. 59.

The Supreme Court addressed the status of Indian property rights inherited from Mexico under the Treaty of Guadalupe Hidalgo in *Tee–Hit–Ton*, 348 U.S. at 288 n. 20, 75 S.Ct. at 321–22 n. 20. The court found that the Gadsden Treaty, which also promised to respect the property rights of Mexicans,

> contained a provision that no grants of land within the ceded territory made after a certain date would be recognized or any grants 'made previously [would] be respected or be considered as obligatory [on the United States Government] which have not been located and duly recorded in the archives of Mexico.' * * * Disputes as to the Indian titles * * * required congressional action for settlement. * * * These problems were [solved] only by congressional recognition of the Pueblos' title to their land * * *. *[T]he Pueblo claims, 'although they are valid, are not held to be so by this [United States] Government, nor by any of its courts, until the claim shall have been acted on specifically [by Congress].* * * * [T]he whole land system of the Territory of New Mexico is held in abeyance until these private land claims shall have been acted on by Con-

gress.' * * * Thus it is seen that congressional action [to recognize any Indian title] was deemed necessary to validate the ownership of the Pueblos * * *. (Emphasis added.)

*Id.*

In her May 27 findings of fact, Judge Yannello found that

> Congress [then] established the office of Surveyor–General in the territory of New Mexico to investigate land titles in the region. His duties included a charge to investigate and report [to Congress] on all land claims originating under Spain and Mexico which were recognized and protected under the Treaty of Guadalupe Hidalgo. Lands in the area were prohibited from sale or other disposal by the government until Congress had acted [to specifically recognize these claims] on his recommendations.

*Taking Decision* at 12, finding No. 16 (citations omitted).

Judge Yannello also found that the Surveyor–General

> failed to fulfill the congressional mandate with respect to [the] Zuni by failing to include [the] Zuni Pueblo in his initial evaluation of Pueblo titles and by failing to determine the true nature and extent of Zuni title within the framework of Spanish and Mexican law as the legislation required. As a result, Zuni title to lands within the claim area was not protected by Congress as it should have been had the government fulfilled its obligations to the Zunis.

*Taking Decision* at 13, finding No. 16. Thus, the May 27 decision found that Congress failed to act to correct the Surveyor–General's errors in performing his mission.

Without corrective action by the Congress, it follows that only permissive occupancy and a continuance of the Tribe's aboriginal title remained. *See Tee–Hit–Ton Indians*, 348 U.S. at 279, 75 S.Ct. at 317.

Plaintiff nevertheless argues that had the Surveyor–General properly assessed Zuni land interests, Congress *would have acted* to specifically recognize the Zuni's

aboriginal title. Speculation about what Congress would have done does not satisfy the legal burden for title recognition which requires evidence of congressional action with intent to recognize aboriginal title. *Id.* The only inference which can be drawn from the Surveyor–General's neglect is that had he properly performed his task, he would have thoroughly investigated all Zuni land claims, and he would have reported his findings, whatever they may have been, to Congress. Congress *may or may not* have acted to recognize the Zuni interests based upon the Surveyor–General's report. To reconstruct with certainty the minds of mid-nineteenth century legislators is impossible. Such speculation cannot form the factual basis for title recognition.

III. The May 27 decision found the Zuni held "aboriginal title" to their lands and the federal Government owed the Zuni "just compensation" for "taking" these lands at various times between 1846 and 1934. These conclusions are inconsistent because the federal Government is not constitutionally obligated to pay, *United States v. Alcea Band of Tillamooks,* 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951), "just compensation" for a "taking" of aboriginal title. The duty to pay "just compensation" under the Fifth Amendment arises only when the Government interferes with recognized title to land. *Id.* Plaintiff, therefore, argues that the decision's use of these terms of art by implication logically requires this Court to grant its motion for recognized title in order to maintain the internal consistency of the decisions.

Recognized title must be based upon evidence of specific congressional intent. *Hynes v. Grimes Packing Co.,* 337 U.S. at 101, 69 S.Ct. at 978. Nowhere does plaintiff point to specific congressional intent through a consummated congressional action to establish recognized title. Without this factual basis, recognition cannot be implied or inferred regardless of the Court's use of such terms of art.

The special jurisdictional act pursuant to which this suit is brought does not offer any guidance as to a prior congressional finding of recognized title. Act of May 15, 1978, Pub.L. 95–280, 92 Stat. 244. In pertinent part, the Act provides that

> jurisdiction is hereby conferred upon the United States Court of Claims to hear, determine, and render judgment on any claims of the Zuni Indian Tribe of New Mexico against the United States with respect to any lands or interest therein in the State of New Mexico or the State of Arizona held by aboriginal title or otherwise which were acquired from the Tribe without payment of adequate compensation by the United States.

*Id.*

Congressional policy awarding *adequate compensation* to the Indians for interference with aboriginal title is frequently confused with the obligation under the Fifth Amendment to pay *just compensation* for taking recognized title.

However regrettable the Surveyor–General's failure to have performed his assignment may be, it is not for this Court to substitute its judgment on a question of National policy for that of the Congress now or over a century ago. Assuming Judge Yannello's findings of fact to be correct as to the Surveyor–General's neglect, this Court believes the result to be unfortunate. Nevertheless, Judge Yannello's findings and conclusions are clear to the extent that the Congress did not act with definite intent to establish recognized title. *See* Takings Decision at 13, finding No. 16. *See also Tee–Hit–Ton Indians,* 348 U.S. at 278, 75 S.Ct. at 316–17. It is not for this Court to question the reasons Congress did not further act to bring about the conclusion which the Surveyor–General may have reached. Falling short of establishing definite intent of the Congress to establish recognized title, plaintiff's argument must fail. *Id.*

Plaintiff's assertions of ambiguities in the findings of fact and conclusions of law in the May 27 opinions do not support its burden of persuasion. The motion to alter or amend the May 27 decisions must be denied, as those decisions contain neither the factual basis nor the legal foundation

necessary for an additional conclusion of law finding recognized title.

Pursuant to the May 27, 1987, decisions on liability, defendant is liable to plaintiff for the claim based upon the Zuni aboriginal title. Defendant must compensate plaintiff for the value of the property at an amount to be determined during the valuation phase of this action. *See* Act of May 15, 1978, Pub.L. 95–280.

### Conclusion

For the foregoing reasons, plaintiff's motion to amend Judge Yannello's May 27, 1987, decision to add a conclusion of law that plaintiff established recognized title under the Treaty of Guadalupe Hidalgo is hereby denied.

A telephone status conference is set for Wednesday, April 26, 1989, at 3:30 p.m. eastern standard time for the parties to advise the Court as to proposed schedules for further proceedings in accordance with RUSCC, Appendix G. The Court will initiate the call to the offices of respective attorneys.

IT IS SO ORDERED.